Kristen K. Waggoner
WA Bar No.27790
AZ Bar No. 32382
Katherine Anderson
WA Bar No. 41707
AZ Bar No. 29490
Ryan Tucker*
AZ Bar No. 034382
Mark Lippelmann*
AZ Bar No. 036553
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
Telephone: (480) 444-0020
kwaggoner@ADFlegal.org
kanderson@ADFlegal.org
rtucker@ADFlegal.org
mlippelmann@ADFlegal.org

Eric Kniffin*
CO Bar 48016
KNIFFIN LAW
102 S. Tejon St., Suite 1100
Colorado Springs, CO 80903
Telephone: (719) 212-4391

George M. Ahrend
WA Bar No. 25160
AHREND LAW FIRM
421 W. Riverside Ave., Suite 1060
Spokane, WA 99201
Telephone: (206) 467-6090
George@luveralawfirm.com
*Counsel for Plaintiffs*

*Admitted *Pro Hac Vice*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ORTHODOX CHURCH IN AMERICA, *ET AL.*,

Plaintiffs,

v.

ROBERT FERGUSON, *ET AL.*,

Defendants.

Case No.: 2:25-cv-00209-RLP

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

JULY 25, 2025
WITH ORAL ARGUMENT: 10 AM
SPOKANE COURTROOM 901

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

Introduction ..............................................................................................................1

Argument..................................................................................................................1

    I.    Clergy have standing to challenge a bill targeting "clergy." ...........................1

    II.   Defendants likely violate the Free Exercise and Equal Protection Clauses. ....5

        A.    Washington law treats clergy privilege worse than attorney privilege...5

        B.    The *Clause* facially discriminates against religion. ...............................6

        C.    The *Clause* selectively repeals privileges for clergy..............................7

        D.    The record shows religious animus. .......................................................9

    III.  Defendants likely fail strict scrutiny..............................................................10

    IV.  Defendants likely violate Plaintiffs' church autonomy. ................................11

    V.   The other preliminary injunction factors weigh in Plaintiffs' favor. ............12

Conclusion .............................................................................................................12

Certificate of Service .............................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Brown v. Entertainment Merchants Ass'n*,
  564 U.S. 786 (2011) ..................................................................................10

*California Trucking Association v. Bonta*,
  996 F.3d 644 (9th Cir. 2021) ...................................................................4, 5

*City of Kent v. Beigh*,
  32 P.3d 258 (Wash. 2001) .......................................................................7, 8

*Etienne v. Ferguson*,
  no. 3:25-cv-05461-DGE, ECF No. 227 (W.D. Wash.) (Order) ... 1, 2, 4, 5, 6, 7, 9, 10, 12

*Evans v. Tacoma School District No. 10*,
  380 P.3d 553 (Wash. Ct. App. 2016) ...........................................................5

*Holt v. Hobbs*,
  574 U.S. 352 (2015) ..................................................................................11

*Lowy v. PeaceHealth*,
  280 P.3d 1078 (Wash. 2012) .......................................................................6

*LSO, Ltd. v. Stroh*,
  205 F.3d 1146 (9th Cir. 2000) .....................................................................2

*Mahmoud v. Taylor*,
  No. 24-297, 2025 WL 1773627 (U.S. June 27, 2025) ................................2

*Masterpiece Cakeshop v. Colorado Civil Rights Commission*,
  584 U.S. 617 (2018) ..................................................................................10

*Miller v. Bonta*,
  646 F. Supp. 3d 1218 (S.D. Cal. 2022) .....................................................12

*Mockaitis v. Harcleroad*,
    104 F.3d 1522 (9th Cir. 1997) ................................................................. 1, 4, 12

*NAACP v. Alabama*,
    357 U.S. 449 (1958) ............................................................................................ 3

*Our Lady of Guadalupe School v. Morrissey-Berru*,
    591 U.S. 732 (2020) .......................................................................................... 12

*Peace Ranch, LLC v. Bonta*,
    93 F.4th 482 (9th Cir. 2024) ............................................................................... 2

*People v. Phillips,*
    N.Y. Ct. Gen. Sess. (1813) ............................................................................... 12

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
    592 U.S. 14 (2020) .............................................................................................. 6

*Seattle Pacific University v. Ferguson*,
    104 F.4th 50 (9th Cir. 2024) ............................................................................... 3

*State v. Hyder*,
    244 P.3d 454 (Wash. Ct. App. 2011) .................................................................. 9

*State v. James-Buhl*,
    415 P.3d 234 (Wash. 2018) ................................................................................. 5

*State v. Motherwell*,
    788 P.2d 1066 (Wash. 1990) ............................................................................... 5

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ............................................................................................ 2

*Tingley v. Ferguson*,
    47 F.4th 1055 (9th Cir. 2022) ............................................................................. 4

*Trammel v. United States*,
    445 U.S. 40 (1980) .............................................................................................. 6

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,

   582 U.S. 449 (2017) ...........................................................................................7

*Union Gospel Mission of Yakima Washington v. Ferguson*,

   2024 WL 3755954 (9th Cir. Aug. 12, 2024) ......................................................4

**Statutes**

2005 Wash. Sess. Laws ch. 417 ...............................................................................9

2006 Wash. Sess. Laws, ch. 30, § 1 .........................................................................8

2009 Wash. Sess. Laws ch. 424, § 1 ........................................................................8

2016 Wash. Sess. Laws ch. 24, § 1 ..........................................................................8

2023 Wash. Sess. Laws ch. 202, § 2 ........................................................................8

RCW. § 26.44.030......................................................................................................7

RCW § 5.60.060.........................................................................................................8

## INTRODUCTION

Just today, a court preliminarily enjoined SB 5375 as to the Catholic Church. *Etienne v. Ferguson*, no. 3:25-cv-05461-DGE, ECF No. 227 (W.D. Wash.) (Order) (attached as Exhibit 1). This Court should do likewise for Orthodox Plaintiffs. "[N]o case … has given approval to the invasion of the … rite of confession by an agency of the government." *Mockaitis v. Harcleroad*, 104 F.3d 1522, 1533 (9th Cir. 1997).

Plaintiffs have standing because Washington's new law threatens priests with prosecution for fulfilling their religious obligations and chills the faithful from receiving the Sacrament of Confession. As the Western District recognized, Defendants "affirmed" enforcement. Order 11. On the merits, Defendants trigger and fail strict scrutiny. Granting attorneys a privilege exemption but denying clergy the same offers "a textbook example" of religious targeting. *Id.* at 17. The *Clause* also "explicitly single[s] out" clergy, retains many secular privileges, and was motivated by religious animus. *See id.* at 18. Defendants make only a cursory—and insufficient—effort to meet their strict scrutiny burden. *See id.* at 20–22.

Plaintiffs don't object to being mandatory reporters; they already report. They simply seek the "narrow" privilege protection for the Sacrament. This Court should join the Western District and preliminarily enjoin Defendants from enforcing SB 5375 to require clergy to disclose information learned solely during the Sacrament.

## ARGUMENT

**I. Clergy have standing to challenge a bill targeting "clergy."**

The new law injures Plaintiffs in two ways: it threatens priests with prosecution for fulfilling their religious obligations and it chills the Orthodox faithful

Reply in Support of Motion for Preliminary Injunction - 1

from going to Confession. And Defendants have affirmed enforcement.

As the Supreme Court recently reaffirmed, "when a deprivation of First Amendment rights is at stake, a plaintiff need not wait for the damage to occur before filing suit." *Mahmoud v. Taylor*, No. 24-297, 2025 WL 1773627, at *20 (U.S. June 27, 2025). And "when the threatened enforcement effort implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing." *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 487 n.7 (9th Cir. 2024) (cited at Opp. 9 n.1). Given the "different standard" that "applies to First Amendment standing," the rule from *Susan B. Anthony List* controls. *See id.*; Order 7 & n.4. Under that rule, Plaintiffs need only show that "the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Mahmoud*, 2025 WL 1773627 at *20. "It is sufficient for standing purposes that the plaintiff intends to engage in a course of conduct arguably affected with a constitutional interest and that there is a credible threat that the challenged provision will be invoked against the plaintiff." *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154–55 (9th Cir. 2000) (citation modified). Even so, Plaintiffs also have standing under Defendants' proffered standard. *See* Opp. 9.

Defendants rightly do not dispute that Plaintiffs have a protected religious right to keep information disclosed during Confession confidential. *See* Opp. 22. Instead, Defendants suggest Plaintiffs don't have a "concrete plan" to violate the law. Opp. 10. But they don't dispute that Plaintiffs' priests hear confession throughout Washington during which the faithful confess their "personal failings" and "intensely private matters." Wilkinson Decl. ¶¶ 5, 13; Phelps Decl. ¶¶ 5, 13; Antiochian Decl. ¶¶ 15, 23, 29, 48. Defendants similarly do not dispute that

1   Plaintiffs have a centuries-old obligation to protect the confidentiality of Confession.
2   *See* Opp. 22. And they don't challenge that the reporting law "discourages penitents
3   from confessing sins" such as parents viewing their children as "burdensome" or
4   "blam[ing] the child for the child's problems in school or at home." MPI 10. Thus,
5   Plaintiffs have "previously engaged in conduct that would violate the challenged
6   law" and have a policy that directly collides with the law, which satisfies the standing
7   inquiry. *Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50, 59 (9th Cir. 2024). Defendants
8   cannot condition a lawsuit to protect the confidentiality of Confession on Plaintiffs'
9   willingness to violate that religious duty. *See* Order 11; *NAACP v. Alabama*, 357
10  U.S. 449, 462 (1958) (recognizing the "vital relationship between freedom to
11  associate and privacy in one's associations").

12  Indeed, the Washington legislature made clear that it passed the *Clause* to
13  target clergy and information disclosed in Confession. MPI 6–9. As Sen. Frame
14  recognized, the *Clause* demands Plaintiffs "change their rules" regarding the
15  confidentiality of Confession—and that's what Plaintiffs cannot and will not do.
16  Kniffin Decl. ¶ 17.

17  Criminal prosecution and civil liability are only half the injury: Defendants
18  don't dispute the *Clause* chills the Orthodox faithful from participating in the
19  Sacrament. *See* MPI 11–12; ROCOR Decl. ¶¶ 46–47; OCA Decl. ¶¶ 46–48. "[A]
20  chilling of the exercise of First Amendment rights is, itself, a constitutionally
21  sufficient injury." *Tingley v. Ferguson*, 47 F.4th 1055, 1067 (9th Cir. 2022) (citation
22  modified). And a "substantial burden is imposed" on church leaders' free exercise
23  rights "by the intrusion into the Sacrament of Penance by officials of the state."

*Mockaitis*, 104 F.3d at 1531. Where such an "intrusion" is "defended … by an assistant attorney-general of the state as not contrary to law," a bishop has "justifiable grounds for fearing that without a declaratory judgment and an injunction … the administration of the Sacrament of Penance for which he is responsible … will be made odious … by the intrusion of law enforcement officers." *Id.* "The sinner will not confess … if the veil of secrecy is removed." *Id.* at 1532.

Plaintiffs also have a credible fear of enforcement under *SBA List*. Defendants miss the mark by arguing that this amended law has "no history of enforcement" and no "specific warning or threat" to Plaintiffs. Opp. 12. It's a new law as to clergy, so this factor has "little weight." *Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021). What weight it does have shows Plaintiffs' standing. Defendants have "affirmed" enforcement, which is "sufficient." Order 11. *Accord Union Gospel Mission of Yakima Wash. v. Ferguson*, 2024 WL 3755954, at *3 (9th Cir. Aug. 12, 2024). Defendant Ferguson was "disappointed" the Catholic Church filed suit against SB 5375 because he thinks infringing on sacramental confidentiality is "important." Kniffin Reply Decl. Exs. L, M. Because Plaintiffs filed this case before the *Clause*'s "effective date … it was not possible for the state to have enforced" it. *Cal. Trucking*, 996 F.3d at 653. But the mandatory reporting law has a long history of criminal and civil enforcement. *See, e.g.*, *Evans v. Tacoma Sch. Dist. No. 10*, 380 P.3d 553, 561 (Wash. Ct. App. 2016); *State v. James-Buhl*, 415 P.3d 234, 236 (Wash. 2018); *State v. Motherwell*, 788 P.2d 1066, 1067 (Wash. 1990) (attempted enforcement of mandatory reporting law against clergy). That "history of past enforcement against parties similarly situated to the plaintiffs cuts in favor of a

conclusion that a threat is specific and credible." *Cal. Trucking*, 996 F.3d at 654.

## II. Defendants likely violate the Free Exercise and Equal Protection Clauses.

Defendants' efforts to resist strict scrutiny fail for four independent reasons. First, under any reading of the mandatory reporting statute, attorneys receive a privilege exemption but clergy don't. Second, the *Clause* facially discriminates against religion. Third, the *Clause* selectively repeals privileges for clergy while leaving secular privileges intact. Finally, the record shows religious animus.

### A. Washington law treats clergy privilege worse than attorney privilege.

Defendants concede that under any reading of the mandatory reporting law, "attorneys working at higher education institutions" receive a privilege "exception" while clergy do not. Opp. 13. That admits a "textbook example" of lack of general applicability and neutrality. Order 17.

The attorney-client privilege and the clergy-penitent privilege guard comparable activities. *Contra* Opp. 16–17. Defendants' claim that attorneys and clergy aren't similarly situated under their mandatory reporter law is irrelevant. *See id.* Plaintiffs don't challenge their addition as mandatory reporters. They only challenge that the law revokes their narrow privilege exemption. Thus, the appropriate comparison is between the secular *privileges* Washington allows and the clergy privilege it refuses. Even so, Washington cannot escape its constitutional obligations simply by classifying all clergy as mandatory reporters but only some attorneys. *See Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 17 (2020) (labeling some businesses "essential" but places of worship as "non-essential" triggered strict scrutiny).

Reply in Support of Motion for Preliminary Injunction - 5

1         The United States Supreme Court and the Washington Supreme Court recognize that both attorney-client and clergy-penitent relationships are "rooted in the imperative need for confidence and trust" and "cannot be effective without candid communication." *Trammel v. United States*, 445 U.S. 40, 51 (1980); *Lowy v. PeaceHealth*, 280 P.3d 1078, 1086 (Wash. 2012). But Defendants treat the secular attorney privilege and the religious clergy privilege differently.

        There is no question mandatory reporting issues arise in law school clinics. *See* Order 17–18 (identifying law school "programs that *directly serve childresn*"). Paul Holland, who oversees a Seattle University clinic that represents "individuals seeking relief from the obligation to register as juvenile sex offenders," claimed that the "dilemma" between the attorney-client privilege and mandatory reporting duties had "forced [him] to alter [his] case selection." Kniffin Reply Decl. ¶ 11. HB 1171's co-sponsor said the Legislature should expand the attorney-client privilege to address "situations that have arisen where an attorney representing a client learns of possible child abuse or neglect." *Id.* ¶ 9. Yet legislators defended HB 1171's carveout for the attorney-client privilege as "narrow." MPI 9. Legislators pointed out the hypocrisy. *See* Kniffin Reply Decl. ¶¶ 11–12. When one asked "why is it ok" to honor the attorney privilege but not clergy privilege, HB 1171's lead sponsor said that it's "based on your conscience and policies." *Id.* ¶ 11.

        **B. The *Clause* facially discriminates against religion.**

        The *Clause* also triggers strict scrutiny because "clergy were explicitly singled out." Order 18; *see* MPI 13. The *Clause* "expressly discriminates" against religion *itself* and thus "imposes a penalty on the free exercise of religion that triggers the

most exacting scrutiny." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 462 (2017).

**C. The *Clause* selectively repeals privileges for clergy.**

The *Clause* is further subject to strict scrutiny because it selectively repeals privileges for clergy. MPI 13–16. Defendants claim the *Clause* is harmless. Opp. 17–18. But their interpretation is untenable because statutes must "be so construed that no clause, sentence or word shall be superfluous, void, or insignificant." *City of Kent v. Beigh*, 32 P.3d 258, 260 (Wash. 2001).

i. The privileged communications carveout, by its express terms, applies to "this *section*." RCW § 26.44.030(1)(b) (emphasis added). "The word 'section' is ordinarily used to denote a separately numbered part of a statute, including all subdivisions or paragraphs." *City of Kent*, 32 P.3d at 260. If the Legislature had intended this carveout to only modify (1)(b), it would have instead designated "this subsection," as it did ten times in Section 26.44.030, three times in (1)(b) alone. It is "an elementary rule that where the Legislature uses certain statutory language in one instance, and different language in another, there is a difference in legislative intent." *Id* at 264. (citation modified) "Therefore the language … 'this section' … encompasses ALL of section [030]." *See id.* at 260.

ii. A court must not "interpret the term 'section' in its nonordinary sense" when doing so would render related sections of Washington law "superfluous, void, or insignificant." *Id*. But Defendants' interpretation does just that. The privileged communications statute subordinates "many*"* privileges to the mandatory reporting statute, but not all. Opp. 14. Since adding 26.44.030(1)(b) in 2005, the Legislature

Reply in Support of Motion for Preliminary Injunction - 7

has recognized four new privileged communications—three with explicit carveout for mandatory reports (domestic violence, mental health, and union privileges) and one without (drug and alcohol recovery). RCW § 5.60.060(8)–(11); 2006 Wash. Sess. Laws, ch. 30, § 1; 2009 Wash. Sess. Laws ch. 424, § 1; 2016 Wash. Sess. Laws ch. 24, § 1; 2023 Wash. Sess. Laws ch. 202, § 2.

Further, Defendants' argument that "all mandated reporters must comply with (1)(a)—even when those individuals also fall within the scope of (1)(b)" renders the *Clause* a nullity. *See* Opp. 18. Because SB 5375 added clergy as mandatory reporters under (1)(a), if there were no available privileges, adding the *Clause* to (1)(b) would be completely superfluous. *See Kent*, 32 P.3d at 260.

iii. During debate on SB 5375, lead sponsor Sen. Frame opposed an amendment that would have stricken the *Clause* and required that the clergy-penitent privilege be treated in a manner consistent with the sexual assault advocate privilege. Kniffin Reply Decl. ¶¶ 8, 10. *Compare* RCW § 5.60.060(7)(b). If, as Defendants claim, the *Clause* "does not treat members of the clergy differently" and that the duty to report under (1)(a) "is unaffected by privilege," Opp. 14, 18, this amendment would have done nothing. Yet Senator Frame claimed the amendment would create an unacceptable "loophole." Kniffin Reply Decl. ¶ 10.

iv. Contrary to Defendants' argument, RCW § 26.44.060(3) does not "expressly specif[y]" that the clergy-penitent privilege is "inapplicable" to the mandatory reporting law. Opp. 15. Clarifying that making a report "shall not be deemed a violation of the confidential communication privilege of RCW 5.60.060(3) [clergy]" doesn't mean that the clergy-penitent privilege is inapplicable; it just

means that clergy *could* have reported.

v. Defendants' cited caselaw (at 15–16) is likewise misleading. All but one of the cited cases predate the 2005 addition of the privileged communications exemption in (1)(b). *See* 2005 Wash. Sess. Laws ch. 417. The only remaining case, *State v. Hyder*, builds on these cases and only refers to the privilege in Section 8.83.110, not those in 5.60.060. 244 P.3d 454, 460 (Wash. Ct. App. 2011).

Defendants' argument presumes Sen. Frame misunderstood her own bill. That's untenable. The superior reading is that the privileged communications sentence applies to the whole "section," just as it says, and that the "[n]othing" clause that follows merely clarifies that (1)(b)'s rules for supervisors do not undercut or qualify any mandatory reporter's duties under (1)(a). This interpretation alone honors the text of Section 26.44.030, the Legislature's fine-tuned references to mandatory reporting in the privilege law, and the legislative history.

**D. The record shows religious animus.**

The record shows much more than "stray remarks" from legislators. *Contra* Opp. 20. It shows "the intentional abrogation of a practice that the legislature understood to be religiously sacrosanct." Order 19. Sen. Frame made multiple comments hostile to religion and narrow privilege for clergy. Kniffin Decl. ¶¶ 11, 17; *see also id.* ¶ 15. The Legislature rejected four separate amendments retaining privilege for clergy while expanding the secular attorney-client privilege exemption. MPI 14–15; *see also* Kniffin Reply Decl. ¶¶ 7, 8, 10. And Defendant Ferguson said it was "important" to invade the Sacrament of Confession, and he was "disappointed" the Catholic Church would file a lawsuit to protect the confidentiality

of Confession. Kniffin Reply Decl. Exs. L, M. All that shows "a clear and impermissible hostility" to Plaintiffs' religion. *Masterpiece Cakeshop v. Colo. C.R. Comm'n*, 584 U.S. 617, 634–36 (2018).

**III. Defendants likely fail strict scrutiny.**

Defendants offer only a cursory—and inadequate—effort to meet their strict scrutiny burden. They claim that adding clergy as mandatory reporters meets strict scrutiny. *See* Opp. 21. But Plaintiffs challenge the revocation of privilege exemptions, not the addition of them as mandatory reporters. *See* MPI 1. Defendants fail to meet their burden because they do not show that removing the privilege is narrowly tailored to any compelling interest. *See* Order 22.

A. Nothing in Defendants' statistical evidence links instances of abuse to information disclosed within the narrow confines of the confidentiality of Confession. *See* Opp. 2–5. But Defendants need evidence of a "direct causal link" to meet their burden. *Brown v. Ent. Merch. Ass'n*, 564 U.S. 786, 799 (2011). What their statistics do show is that in 2023 in Washington (as opposed to Defendants' irrelevant discussion of national statistics), only 2.9% of reports from all sources were "substantiated." Kniffin Reply Decl. ¶ 13. The rest were unsubstantiated or didn't even trigger the law, with 67 reports even identified as "intentionally false." *Id.* And while Defendants claim "serious health concerns," their data doesn't show that those "concerns" were at all substantiated, and their other data suggests only a small number would be. *See* Paradis Decl. Ex. 9, Doc. 148-9 at 3. Evidence also indicates that mandatory reporting laws are counterproductive because they overburden government resources, erode trust in professional relationships, and

discourage families in need from seeking help. Kniffin Decl. Ex. J at 26–40.

B. Defendants acknowledge at least 43 states have mandatory reporter laws that respect the clergy-penitent privilege. Opp. 5–6. That directly parallels the facts in *Holt v. Hobbs*, where Arkansas said its compelling interest in prison security justified refusing a religious accommodation for a half-inch beard, but 43 states had found otherwise. 574 U.S. 352, 368 (2015) (citing Pet. Br. 24–25, 2014 WL 2200467 (43 states and federal BOP permit such beards for religious reasons)). The Supreme Court held that "when so many [states] offer an accommodation" for religious exercise, an outlier state "must, at a minimum, offer persuasive reasons why it believes that it must take a different course." *Id*. at 369. As in *Hobbs*, Defendants' "fail[ure] to make that showing" is determinative. *Id*.

C. Defendants' rational basis arguments, Opp. 20, miss the mark for the same reasons. Plaintiffs challenge only the revocation of the privilege exemptions. That revocation will discourage penitents from coming to Confession, which will prevent them from receiving both absolution and spiritual counseling to make amends in their lives (and Washington recognizes secular privileges for similar reasons). *See* OCA Decl. ¶¶ 28–29, 63–64. The *Clause* is thus counterproductive and cannot withstand even rational basis review.

**IV. Defendants likely violate Plaintiffs' church autonomy.**

As Defendants admit, the church autonomy doctrine protects churches' right "to decide matters of faith and doctrine without government intrusion." Opp. 22 (citation modified). That's exactly what the *Clause* prevents. As a doctrinal matter, Plaintiffs cannot disclose what their priests hear in confession. *E.g.,* Wilkinson Decl.

¶¶ 7–8. But, as summarized by Sen. Frame, the *Clause* requires Plaintiffs to change their "rules" on that confidentiality.

The autonomy doctrine expands beyond the ministerial exception. *Contra* Opp. 23. It protects religious organizations' "independence in matters of faith and doctrine." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 747 (2020). That includes attempted state interference in the rules for the Sacrament— "an essential expression of the Christian faith and central to growth in spiritual life." OCA Decl. ¶ 23. Invading the confidentiality of confession "is to declare that there shall be no penance" and "annihilate[ ]" the Sacrament. *Mockaitis*, 104 F.3d at 1532 (quoting *People v. Phillips* N.Y. Ct. Gen. Sess. (1813)). Both the caselaw and related historical practice show Plaintiffs' church autonomy claim will likely succeed.

## V.  The other preliminary injunction factors weigh in Plaintiffs' favor.

Defendants' arguments about the other preliminary injunction factors are derivative of their arguments on the merits. *See* Opp. 24–25. They fail for the same reasons. *See* Order 22–23. Plaintiffs will suffer imminent harm from a law targeted at them. *Supra* Part I. And the law chills the faithful in fulfilling their religious obligations. *Id.* Finally, "it is always in the public interest to enjoin unconstitutional laws." *Miller v. Bonta*, 646 F. Supp. 3d 1218, 1231 (S.D. Cal. 2022).

## CONCLUSION

The Court should join the Western District and enter a preliminary injunction enjoining Defendants from enforcing SB 5375 to require Plaintiffs to disclose information they learn solely during the Sacrament of Confession.

Respectfully submitted this 18th day of July 2025,

| | |
|---|---|
| Eric Kniffin* | */s/ Katherine Anderson* |
| CO Bar 48016 | Kristen K. Waggoner |
| KNIFFIN LAW PLLC | WA Bar No.27790 |
| 102 S. Tejon St., Suite 1100 | AZ Bar No. 32382 |
| Colorado Springs, CO 80903 | Katherine Anderson |
| (719) 212-4391 | WA Bar No. 41707 |
| eric@kniffin.law | AZ Bar No. 29490 |
| | Ryan Tucker* |
| George M Ahrend | AZ Bar No. 034382 |
| WA Bar No. 25160 | Mark Lippelmann* |
| AHREND LAW FIRM PLLC | AZ Bar No. 036553 |
| 421 W. Riverside Ave. | ALLIANCE DEFENDING FREEDOM |
| Suite 1060 | 15100 N. 90th Street |
| Spokane, WA 99201 | Scottsdale, AZ 85260 |
| Telephone: (206) 467-6090 | Telephone: (480) 444-0020 |
| George@luveralawfirm.com | kanderson@ADFlegal.org |
| | rtucker@ADFlegal.org |
| | mlippelmann@ADFlegal.org |
| | |
| | John J. Bursch* |
| | MI Bar No. P57679 |
| *Counsel for Plaintiffs* | Mathew W. Hoffmann* |
| | VA Bar No. 100102 |
| | ALLIANCE DEFENDING FREEDOM |
| | 44180 Riverside Parkway |
| *Admitted *Pro Hac Vice* | Lansdowne, VA 20176 |
| | Telephone: (571) 707-4655 |
| | mhoffmann@ADFlegal.org |
| | |
| | David A. Cortman* |
| | GA Bar No. 188810 |
| | ALLIANCE DEFENDING FREEDOM 1000 |
| | Hurricane Shoals Rd. NE Suite D-1100 |
| | Lawrenceville, GA 30043 |
| | Telephone: (770) 339-0774 |
| | dcortman@adflegal.org |

Reply in Support of Motion for Preliminary Injunction - 13

**CERTIFICATE OF SERVICE**

I hereby certify that on July 18, 2025, I electronically filed the foregoing paper with the Clerk of Court using the ECF system which will send notification of such filing to all counsel of record.

                            *s/ Katherine Anderson*
                            Katherine Anderson